IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA O'BRIEN, | ) |
| Plaintiff, | ) ) ) ) Civil Action No. _____ |
| v. | ) ) |
| CHARLES I. TURNER and ACCREDITED COLLECTION AGENCY, INC. a/k/a A.C.A. RECOVERY, INC., | ) ) ) **JURY TRIAL DEMANDED** ) ) ) |
| Defendants. | ) |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Patricia O'Brien, by her undersigned counsel, alleges, on knowledge as to herself and on information and belief as to all other matters, as follows:

### **Introduction**

1. This is an action by an individual consumer for actual and statutory damages stemming from Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), which prohibits debt collectors from engaging in unfair, deceptive, or abusive practices in collecting consumer debts.

### **Jurisdiction and Venue**

2. This Court has subject matter jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the Defendant transacts business here and the conduct complained of occurred here.

## Parties

4. Plaintiff Patricia O'Brien is a natural person domiciled in the County of Erie and State of New York, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant Charles I. Turner ("Turner") is a natural person domiciled in the State of New Jersey who is admitted to practice law in the States of New Jersey and New York, who maintains an office in Ridgewood, New Jersey which he has registered with the New Jersey State Bar.

6. Turner regularly attempts to collect debts alleged to be due another, and is and has at all times pertinent hereto been a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

7. Accredited Collection Agency, Inc. ("ACA") is a corporation organized and existing under the laws of the State of New Jersey, whose mailing address is a UPS mail drop located at 38 E. Ridgewood Ave. #395, Ridgewood, New Jersey, and which has a physical office located at 395 W. Passaic Street, 3rd Floor, Rochelle Park, New Jersey. ACA also does business under the name ACA Recovery, Inc.

8. ACA regularly attempts to collect debts alleged to be due another, and is and has at all times pertinent hereto been a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6). ACA specializes in, among other things, the collection of defaulted payday loans, and publicly advertises that it does so on behalf of seven of the ten largest payday lenders nationwide.

9. The acts of Turner and ACA alleged hereinafter were performed by them or their respective employees acting within the scope of their actual or apparent authority.

**Factual Allegations**

10. In April 2013, Ms. O'Brien obtained a payday loan over the Internet from a lender calling itself National Payday, in the amount of $300.

11. The obligation thereby incurred arose out of a transaction in which money, services, or property, which was the subject of the transaction, was primarily for personal, family, and/or household purposes. As such, it is a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

12. The payday loan from National Payday carried an annual percentage rate far in excess of 100% annually. Indeed, the loan terms called for biweekly finance charges of $114, which works out to an approximately 990% APR.

13. Because the loan carried an interest rate in excess of 16% annually, it was unenforceable as to principal and interest pursuant to New York General Obligation Law §§ 5-501 and 5-511 and Banking Law § 14-a. Indeed, National Payday committed a felony in making the loan under New York Penal Law §§ 190.40, 190.42. And because the APR was more than double the enforceable rate, the loan constituted "unlawful debt" under the federal Racketeering Influenced and Corrupt Organizations (RICO) Act, and any collection of amounts due under the loan was a felony under federal law.

14. National Payday is aware that its loans are not enforceable in the State of New York, as it explicitly states on its website that its payday loans are not available and will not be made to New York residents. Despite this disclaimer and knowledge, National Payday lent to Ms. O'Brien.

15. Ms. O'Brien initially made two payments on the payday loan, but ultimately stopped doing so because she was no longer financially able to do so.

16.     Sometime in or before July 2013, National Payday consigned, assigned, sold, placed, or otherwise transferred the subject debt to Defendant ACA for collection from Ms. O'Brien.  On information and belief, Defendant ACA in turn either retained or assigned Mr. Turner, as its in-house counsel, to attempt to collect the loan.

17.     On information and belief, Defendant Turner acts as in-house counsel for Defendant ACA.

18.     On July 29, 2013, Defendant Turner signed and mailed a letter to Ms. O'Brien concerning the payday loan.

19.     The letter bore Mr. Turner's letterhead, providing as his mailing address the ACA mailing address at 38 E. Ridgewood Ave. # 395, Ridgewood, New Jersey, but providing as his phone number the office phone number that Mr. Turner has on file with the State Bar of New Jersey, 201-670-8851.

20.     The July 29 letter stated falsely that the loan with National Payday was "enforceable" when, in reality, the loan was void and unenforceable as to both principal and interest because it violated New York usury laws.

21.     The July 29 letter stated falsely that Ms. O'Brien had a "legal obligation to repay" the payday loan when, in reality, the loan was void and unenforceable as to both principal and interest because it violated New York usury laws, Ms. O'Brien had no obligation to repay it, and Mr. Turner committed a felony by attempting to collect such payment.

22.     The July 29 letter also confusingly stated that Mr. Turner had been retained by "United Credit Specialists" but that Ms. O'Brien should contact ACA directly about the loan, without saying who ACA is.  United Credit Specialists is apparently a trade name used by ACA.

23. On or around September 13, 2013, Ms. O'Brien received phone messages on her work and cell phone numbers from a Linda Banks who stated Ms. O'Brien needed to call her about an important matter, giving Defendant Turner's office phone number on file with the State Bar of New Jersey as the number to reach her. That same day, Ms. Banks phoned Ms. O'Brien's sister and mother asking them to have Ms. O'Brien call her. Ms. Banks did not leave the "mini-Miranda" warning required by 15 U.S.C. § 1692e(11), in either message. In the message left at work, Ms. Banks stated that it was "imperative" Ms. O'Brien contact her before 12pm Eastern time because that was the deadline for Ms. Banks to make a "recommendation." Ms. O'Brien called the number, and reached Ms. Banks, who stated she worked in Defendant Turner's office. Ms. Banks proceeded to yell at Ms. O'Brien stating that she was obligated to pay under this loan. Because all calls made by Ms. Banks to collect this loan were felonies, the making of each call violated 15 U.S.C. § 1692f. Ms. Banks's rude treatment of Ms. O'Brien also violated 15 U.S.C. § 1692d. Ms. Banks acted on behalf of Defendants Turner and ACA in making these calls.

## COUNT
**(Violation of Fair Debt Collection Practices Act by All Defendants)**

24. Ms. O'Brien repeats and realleges paragraphs 1 through 23 of her Complaint as though fully set forth in this paragraph.

25. The conduct of Defendants Turner and ACA as described in the Complaint violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1), in that Defendants Turner and ACA falsely stated that they were attempting to collect a legal and enforceable obligation.

26. The conduct of Defendants Turner and ACA as described in the Complaint violated 15 U.S.C. §§ 1692e(2)(A), 1692f, and 1692f(1), in that Defendants Turner

and ACA had no legal right to attempt to collect the instant debt, which attempt was itself a crime.

27. The conduct of Defendants Turner and ACA as described in the Complaint violated 15 U.S.C. § 1692e(11), in that Defendants Turner and ACA left Ms. O'Brien voicemails that did not contain the required mini-Miranda warning.

28. The conduct of Defendants Turner and ACA as described in the Complaint violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10) in that Defendants Turner and ACA created a false sense of urgency and a false appearance that they had any legal right to do anything to collect the loan by threatening to make a "recommendation" about the loan if she did not contact them immediately.

29. Ms. O'Brien has suffered actual damages as a result of Defendants Turner's and ACA's illegal collection communications, in the form of anger, anxiety, emotional distress, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy, thus causing her additional anger, anxiety, emotional distress, frustration, upset, humiliation, embarrassment, and other negative emotions.

**Jury Demand**

30. Ms. O'Brien demands a trial by jury in this action.

**Prayer for Relief**

WHEREFORE, Plaintiff Patricia O'Brien respectfully demands that the Court enter judgment against Defendants for:

A. An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

B. An award of statutory damages of $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

C. An award of costs, disbursements, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3);

D. Interest on the aforementioned judgments; and

E. Such other and further relief as this Court may deem just and proper.

Dated: Buffalo, New York
September 9, 2014

_____s/ Matthew A. Parham_____
Matthew A. Parham
Western New York Law Center
237 Main Street, Suite 1130
Buffalo, New York 14203
(716) 855-0203 x112
mparham@wnylc.com

*Attorneys for Plaintiff Patricia O'Brien*

# **VERIFICATION**

STATE OF NEW YORK    )
                                  ) ss:
COUNTY OF ERIE       )

        PATRICIA O'BRIEN, being duly sworn, deposes and says:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this Complaint in good faith and solely for the purposes set forth in it.

                                                                                 _____
                                                                                    Patricia O'Brien

Sworn to before me this
____ day of August, 2014

_____
Notary Public